IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADALBERTO MARTINEZ-RAMIREZ,<br><br>Defendant. | 8:16CR196<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on Adalberto Martinez-Ramirez's ("Martinez-Ramirez") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 227). The government opposes (Filing No. 237) post-conviction relief. For the reasons stated below, Martinez-Ramirez's § 2255 motion is denied.

I.   **BACKGROUND**

On July 19, 2016, a federal grand jury charged Martinez-Ramirez and others with drug trafficking and money laundering in an eleven-count Superseding Indictment (Filing No. 71). Martinez-Ramirez retained attorney Bassel F. El-Kasaby ("El-Kasaby") to defend him.

Through counsel, Martinez-Ramirez moved to suppress (Filing No. 102) the custodial statements he made to law enforcement following his arrest and all evidence obtained as a result of those statements. On November 4, 2016, the Court granted (Filing No. 115) Martinez-Ramirez's motion and suppressed the challenged evidence.

Following successful plea negotiations, Martinez-Ramirez pled guilty on March 31, 2017, to Counts I and X of the Superseding Indictment. Count I charged him with conspiring to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1) and 846. Count X charged him with conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h). Under the terms of Martinez-Ramirez's written plea agreement (Filing No. 169), the government agreed to dismiss the remaining charges against him at sentencing, and Martinez-Ramirez agreed to limit his rights to appeal and collaterally attack his conviction and sentence. In changing his plea, Martinez-Ramirez testified under oath that El-Kasaby had done everything he had asked him to do and that Martinez-Ramirez did not have any concerns or complaints about El-Kasaby or his representation.

At a contested sentencing hearing on October 10, 2017, the Court accepted Martinez-Ramirez's plea agreement with the government. Upon hearing the extensive evidence presented at the hearing, reviewing the presentence investigation report ("PSR") the probation office prepared on Martinez-Ramirez (Filing No. 204), and analyzing the 18 U.S.C. § 3553(a) sentencing factors, the Court sentenced Martinez-Ramirez to 324 months imprisonment on Count I and 240 months on Count X, to run concurrently. Martinez-Ramirez did not appeal.

On October 16, 2018, Martinez-Ramirez timely moved for relief under § 2255, alleging El-Kasaby provided ineffective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution. The Court set the matter for an evidentiary hearing and appointed Michael J. Wilson to represent Martinez-Ramirez under the Criminal Justice Act of 1964, as amended, 18 U.S.C. § 3006A.

At the hearing on February 21, 2020, Martinez-Ramirez, who participated by phone with the assistance of an interpreter, and El-Kasaby both testified. The government also admitted into evidence eight exhibits consisting of emails and attachments exchanged between El-Kasaby and the government during plea negotiations and law-firm records of El-Kasaby's representation of Martinez-Ramirez. After carefully considering that

evidence and the balance of the record in this case, the Court finds Martinez-Ramirez is not entitled to any relief.

## II. DISCUSSION

### A. Allegations of Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel at all critical stages of a criminal proceeding, including plea negotiations, sentencing, and appeal. U.S. Const. amend. VI; *Lee v. United States*, 582 U.S. ___, ___, 137 S. Ct. 1958, 1964 (2017). Section 2255(a) authorizes a federal prisoner whose "sentence was imposed in violation of" that right to move the Court "to vacate, set aside or correct [his] sentence."

Martinez-Ramirez so moves, asserting El-Kasaby was unconstitutionally ineffective in failing to (1) file an appeal as directed, (2) object to the inclusion of certain offense-level adjustments under the United States Sentencing Guidelines ("U.S.S.G. or "Guidelines") in his PSR, and (3) timely communicate a more-favorable plea offer from the government that Martinez-Ramirez says he would have accepted. To establish ineffective assistance of counsel, a prisoner generally must meet the familiar two-part test articulated in *Strickland v. Washington* by showing counsel's representation was both deficient and prejudicial. 466 U.S. 668, 687-88 (1984) (explaining counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). In other words, the prisoner must show his "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 688, 694.

The prisoner's burden is a heavy one. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). He must overcome "a strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance" and could be

3

considered sound strategy. *Strickland*, 466 U.S. at 689. "It is not sufficient for [him] to show that the error had some 'conceivable effect' on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 693). Martinez-Ramirez does not meet his burden.

### 1. Failure to File an Appeal

Martinez-Ramirez first argues El-Kasaby was ineffective in failing to file a notice of appeal despite Martinez-Ramirez's instructions to do so. That claim is a little different than the others. "[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). "Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so." *United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014).

To succeed on this claim, Martinez-Ramirez "must show that he manifestly 'instructed [his] counsel to file an appeal.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (alteration in original) (quoting *Barger*, 204 F.3d at 1182). Martinez-Ramirez's "bare assertion" that he made such "a request is not by itself sufficient to support a grant of relief, if" more-credible evidence indicates otherwise. *Barger*, 204 F.3d at 1182. Such is the case here.

Martinez-Ramirez testified he and El-Kasaby discussed the possibility of an appeal four times: (1) when he signed the plea agreement, (2) when he received his PSR, (3) immediately after the sentencing hearing, and (4) after the time to appeal had passed. According to Martinez-Ramirez, when he told El-Kasaby he was concerned about pleading guilty and getting a long sentence, El-Kasaby repeatedly assured him he could appeal no matter what happened in court. Martinez-Ramirez further testified that after he was

4

sentenced, El-Kasaby again told him not to worry about the length of his sentence because he would file an appeal but never did.

On cross-examination, Martinez-Ramirez claimed neither his plea agreement nor El-Kasaby ever said anything about waiving or limiting his right to appeal. He testified it was not until after he asked El-Kasaby why he had not appealed within the fourteen-day deadline that El-Kasaby told him there was no possibility of appeal and that nothing could be done. Martinez-Ramirez contends that before that, he fully expected El-Kasaby to file an appeal.

El-Kasaby denies Martinez-Ramirez instructed him to appeal. El-Kasaby testified he advised Martinez-Ramirez that pleading guilty would limit his appeal rights under the terms of his plea agreement. El-Kasaby explained that when Martinez-Ramirez raised the possibility of appeal after sentencing, El-Kasaby reminded him of his waiver and warned him an appeal could be risky if the appeal breached the plea agreement. According to El-Kasaby, Martinez-Ramirez never asked him to file an appeal after that and El-Kasaby never told him he would. El-Kasaby states that if Martinez-Ramirez had asked, he would have filed an appeal and a brief under *Anders v. California*, 386 U.S. 738 (1967).

While the supporting evidence does not weigh heavily either way, the Court finds El-Kasaby's testimony on this point to be more credible because it is more consistent with the record as a whole. For example, Martinez-Ramirez now says he expected all along that El-Kasaby would appeal and suggests he never knew of any limit on his appeal rights until after the time to appeal had expired. But in his signed plea agreement he "knowingly and expressly waive[d] any and all rights to appeal [his] conviction and sentence" with very limited exceptions. And in changing his plea, Martinez-Ramirez twice advised the Court he understood he was giving up nearly all his rights to appeal his conviction and sentence. In contrast, El-Kasaby credibly testified he explained to Martinez-Ramirez that

5

he had more to lose than gain from an appeal given his appeal waiver and that Martinez-Ramirez never asked him to appeal after that.

Martinez-Ramirez has not persuasively established he manifestly instructed El-Kasaby to appeal despite his appeal waiver.

### 2. Failure to Object to the Aggravating-Role Adjustment

Martinez-Ramirez's next argument relates to the application of a four-level aggravating-role increase he received under U.S.S.G. § 3B1.1(a) for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In Martinez-Ramirez's view, El-Kasaby rendered ineffective assistance by failing to object to that increase on the grounds that Martinez-Ramirez was not a leader or organizer with respect to the money-laundering charge. The argument falls short.

Martinez-Ramirez's counts of conviction—Count I (drug conspiracy) and Count X (money-laundering conspiracy)—were grouped for Guideline-calculation purposes. *See* U.S.S.G. § 3D1.2(d). Under § 3D1.3(b), the Guideline for the money-laundering conspiracy—§ 2S1.1—provided the offense level for the group because it resulted in the highest offense level. Section 2S1.1(a)(1), in turn, required the Court to draw Martinez-Ramirez's base offense level from the underlying drug conspiracy because, as Martinez-Ramirez points out, he "committed the underlying drug crime and the Base Offense Level applicable thereto could be determined." After increasing Martinez-Ramirez's base offense level two levels under § 2S1.1(b)(2)(B) because Martinez-Ramirez was convicted under 18 U.S.C. § 1956, the Court added four levels under § 3B1.1(a) based on Martinez-Ramirez's role as a leader or organizer.

Martinez-Ramirez contends that was a mistake that El-Kasaby should have prevented. He bases the argument on Application Note 2(C) to § 2S1.1(a)(1), which provides that the "application of any Chapter Three adjustment shall be determined based on the offense covered by [§ 2S1.1] (i.e., the laundering of criminally derived funds) and

not on the underlying offense from which the laundered funds were derived." As Martinez-Ramirez sees it, "the sentencing record in this case" establishes (1) the Court erroneously applied the four-level increase under § 3B1.1(a) based *solely* on his role in the underlying drug offense, not the money-laundering offense, and (2) El-Kasaby failed to object to the calculation error, subjecting Martinez-Ramirez to a much longer sentence.[1] Martinez-Ramirez asserts the government never alleged he was "a leader or organizer with respect to the laundering Count . . . and has, therefore, waived such."

The government rejects Martinez-Ramirez's position. It notes "the Guidelines offense calculations in the PSR did not differentiate between Martinez-Ramirez's role in the drug conspiracy and the money laundering conspiracy." Although the government does not dispute that much of the discussion of the role enhancement at the sentencing hearing focused on Martinez-Ramirez's role as a leader and organizer in the drug conspiracy, the government maintains "Martinez-Ramirez has not shown that his counsel was ineffective concerning the role enhancement." Alternatively, the government states that "[e]ven assuming error, Martinez-Ramirez was not prejudiced because the evidence supported a role enhancement as to the money laundering conspiracy."

According to the government, Martinez-Ramirez fails to recognize the substantial overlap between the two conspiracies and ignores what would have happened if El-Kasaby had "objected to the manner in which the role enhancement was analyzed," including the presentation of additional evidence. In support, the government primarily relies on *Avila v. United States*, No. CR M-11-319-2, 2017 WL 1088354, at *12 (S.D. Tex. Feb. 17, 2017), *report and recommendation adopted*, No. 7:14-CV-50, 2017 WL 1079254 (S.D. Tex. Mar. 21, 2017), in which the court rejected a nearly identical argument based on Application Note 2(C) because the prisoner seeking relief under § 2255 could not establish his counsel's

---

[1] By Martinez-Ramirez's calculation, El-Kasaby's "unprofessional errors and omissions"—and the resulting increase in Martinez-Ramirez's offense level and Guideline range—caused Martinez-Ramirez to suffer a 62-month increase in his sentence.

7

representation was deficient and prejudicial. In reaching that conclusion, the *Avila* court reasoned the prisoner failed "to account for the practical effects of such an objection," such as a likely amendment to the presentence investigation report addressing the issue and a counter argument from the government. *Id.* at *11.

The *Avila* court further found the prisoner failed "to show that his sentence was improperly calculated or that the [sentencing court] lacked a sufficient, reliable factual basis to support the enhancement as applied." *Id.* Emphasizing that the prisoner did not cite any "binding or persuasive precedent saying that the [sentencing] court was required to separate [his] role in the concomitant criminal activities for each offense with . . . exacting surgical precision," the *Avila* court decided the sentencing court could "draw reasonable inferences from the" reliable, unrebutted facts in the presentence investigation report and reasonably conclude—based on that report and the facts in the record—that the prisoner "played a significant role in the money laundering—independent of the drug Count." *Id.* at 11-12.

The government presses similar arguments here. According to the government, Martinez-Ramirez's ineffective-assistance claim based on Application Note 2(C) fails because "[t]he two conspiracies" in this case "were intertwined" and the evidence overlapped. *See United States v. Robertson*, 883 F.3d 1080, 1086 (8th Cir. 2018) (explaining how drug-trafficking and money-laundering conspiracies can be intertwined). Highlighting key evidence from the contested sentencing hearing and the PSR, the government contends "[t]he same evidence supporting Martinez-Ramirez's role in the methamphetamine conspiracy also showed his role in the money laundering conspiracy." In particular, the government emphasizes the number of participants involved in both distributing the drugs and laundering the proceeds and their extensive use of a funnel account to move proceeds from Omaha to the Mexico border. The government maintains the aggravating-role enhancement was properly applied because the record evidence

8

establishes "[t]here were five or more participants in each conspiracy, each was otherwise extensive and Martinez-Ramirez acted as an organizer or leader in both."[2]

Having carefully reviewed the parties' arguments and the record in this case, including the factual basis for Martinez-Ramirez's guilty plea, the PSR, and the sentencing transcript, the Court finds Martinez-Ramirez has not shown he is entitled to relief on this claim. Martinez-Ramirez faults El-Kasaby for failing to object more specifically to the aggravating-role enhancement for the money-laundering count, but El-Kasaby vigorously objected to the enhancement as generally set forth in the PSR, describing it as the most important sentencing issue. At the sentencing hearing, El-Kasaby—perhaps more focused on money laundering than anyone—affirmatively challenged the factual basis for the enhancement as it related to the money-laundering charge. El-Kasaby specifically questioned the government's witnesses about the scope of the money-laundering conspiracy, Martinez-Ramirez's connection to the funnel account, and his alleged role as a leader or organizer of the money-laundering conspiracy.

At this point, the question is not whether El-Kasaby could have done more to challenge the enhancement or articulate the precise issue; the question is whether El-Kasaby's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Court concludes it did not. In these circumstances, any error in failing to more effectively object to the aggravating-role enhancement for the money-laundering offense was not so serious that El-Kasaby "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

---

[2] The Court notes the government's position aligns (at least to some degree) with *United States v. Lozano*, 745 F. App'x 466, 467 (3d Cir. 2018) (unpublished), in which the Third Circuit rejected the defendant's argument that Application Note 2(C) "precluded the District Court from considering his role as a supplier in deciding if the four-level organizer adjustment under U.S.S.G. § 3B1.1(a) applied to him" and upheld the court's determination that the defendant "was an organizer or leader of *both* the drug conspiracy and the money laundering conspiracy."

Even assuming Martinez-Ramirez could establish El-Kasaby's objection was deficient, he still fails to show prejudice. When all is said and done, the Court is not convinced there is a reasonable probability that Martinez-Ramirez would have received a lower sentence even if El-Kasaby had made Martinez-Ramirez's proposed objection based on Application Note 2(C). *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). The evidence presented at the sentencing hearing fairly established that Martinez-Ramirez was a leader or organizer in both conspiracies under § 3B1.1(a).

### 3. Failure to Timely Relay a More-Favorable Plea Offer

Martinez-Ramirez last argues El-Kasaby "was ineffective for failing to timely communicate a plea offer" from the government in January 2017 that he calculates would have reduced his sentencing exposure by 62 months. Martinez-Ramirez states he first learned about the offer when reviewing the materials in the case file he obtained from El-Kasaby. Martinez-Ramirez avers he would have accepted the more favorable offer had he known about it before it expired.

The government does not dispute that the offer was made or that El-Kasaby had a duty to convey it. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). The issue is whether El-Kasaby conveyed the offer to Martinez-Ramirez. El-Kasaby says he did; Martinez-Ramirez says he didn't.

Although El-Kasaby's record keeping leaves a lot to be desired, *see, e.g.*, *Rodriguez v. United States*, No. 3:10-CR-05018-DGK, 2016 WL 1531819, at *3 (W.D. Mo. Apr. 14, 2016) (finding defense counsel's testimony rebutting his client's "allegations that he failed to forward all plea offers to him is particularly trustworthy because it [wa]s corroborated by numerous emails exchanged between Counsel and the prosecutor"), the Court is

satisfied he did convey the offer and Martinez-Ramirez rejected it. At the § 2255 hearing, El-Kasaby credibly testified that—consistent with his standard practice—he conveyed every offer the government made to Martinez-Ramirez (including the January 2017 offer) shortly after receiving it. El-Kasaby further testified at some length about his discussions with Martinez-Ramirez about his plea negotiations with the government. According to El-Kasaby, he advised Martinez-Ramirez to accept the January 2017 offer because of the overwhelming evidence against him, but Martinez-Ramirez refused at that time to accept any deal that required him to serve more than five years in prison.

The Court does not believe Martinez-Ramirez's claim that El-Kasaby never relayed the offer in question and that the only time he discussed a plea offer with El-Kasaby was when he signed his plea agreement on March 26, 2017. Martinez-Ramirez's hearing testimony reveals that he frequently makes absolute statements that fail to withstand closer scrutiny. Those dubious statements and his admitted inability to fully recall his meetings with El-Kasaby undermine his credibility.

### B. No Certificate of Appealability

Martinez-Ramirez cannot appeal the denial of his § 2255 motion without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). This Court cannot issue a certificate of appealability unless Martinez-Ramirez "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He can make such a showing "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Upon careful review, the Court finds Martinez-Ramirez has not made the necessary showing; therefore, the Court will not issue a certificate of appealability.

In light of the foregoing,

11

IT IS ORDERED:

1. Adalberto Martinez-Ramirez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Filing No. 227) is denied.
2. No certificate of appealability will issue.
3. A separate judgment will be entered.
4. The Clerk of the Court is directed to mail a copy of this Memorandum and Order and the Judgment to Adalberto Martinez-Ramirez at the address of record for his current place of incarceration.

Dated this 28th day of May 2020.

BY THE COURT:

*[signature]*

Robert F. Rossiter, Jr.
United States District Judge